General Electric Company et al., Petitioners *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board and Donald D. Porretto, Respondents.

Argued March 14, 1980, before Judges WILKIN-SON, JR., BLATT and MACPHAIL, sitting as a panel of three. Reargued September 9, 1980, before President Judge CRUMLISH and Judges WILKINSON, JR., MENCER, ROGERS, BLATT, CRAIG and MACPHAIL. Judge WILLIAMS, JR. did not participate.

*P. Ronald Cooper, Reding, Rea & Cooper,* for petitioners.

*Damon J. Faldowski, Phillips & Faldowski,* for respondent, Donald D. Porretto.

OPINION BY JUDGE BLATT, September 3, 1981:

The petitioners, who were the General Electric Company (employer) and its insurer, appeal a decision of the Workmen's Compensation Appeal Board (Board) affirming a referee's finding that the claim-

ant, Donald D. Porretto, was totally disabled from July 18, 1977 to March 10, 1978.

The claimant worked in a variety of positions beginning in 1964 and was employed as a parts delivery attendant at all times relevant to the claim here concerned. He contends that he was disabled in the course of his employment as a result of striking his head on the top of his delivery truck's doorway once on April 11, 1977 and again on an undetermined day in late May of the same year. Subsequently he was moved from day to night shift. On July 25, 1977 he notified his employer of the work-related incidents which he said had occurred in April and May and had requested that his supervisor remove him from the night shift because the hours and duties were having an adverse effect on his health. On the same day he was discharged by his employer due to a "lack of suitable work status."

The record indicates that the claimant was suffering from back and neck pain, that he was losing weight and that he lacked energy, but there was sharply conflicting medical evidence presented as to the cause of his disability. The claimant introduced a deposition from Dr. Paul J. Harbosky, a chiropractor treating the claimant, who testified that he had examined the claimant on July 18, 1977 and found him to have disc hypertrophy and "military neck" which he described as a straightening or loss of curvature of the cervical spine. Dr. Harbosky further testified that he had again examined the claimant in December of 1977 and that, although he had made some improvement, the claimant was still disabled by these conditions and that they had resulted from the employment-related incidents in which the claimant reported that he had twice struck his head on the doorway of his employer's truck. The claimant also introduced a letter from a Dr. Sherman,

written to the claimant's attorney, which stated that Dr. Sherman had examined the claimant on November 17, 1977, but was unable to find any medical basis for the claimant's complaints and that the reported symptoms were emotional reactions to the change in his work schedule. The employer produced medical testimony that the claimant was suffering from an "anxiety-type reaction" to his change at work.

The referee made the following finding of fact:

5. Based upon sufficient and competent evidence of record in this case from Paul J. Harbosky, a chiropractor who treated claimant, claimant sustained a military neck and disc hypertrophy as a result of the work related incidents of April 11, 1977 and some unknown date during the last week of May, 1977.

The referee then granted benefits for total disability from July 18, 1977 to March 10, 1978 and the Board affirmed that decision. This appeal followed.

Where, as here, the cause of a disability is not obvious, a claimant must present unequivocal medical evidence on the issue of causation, *Morgan v. Giant Markets, Inc.*, 483 Pa. 421, 397 A.2d 415 (1979), and a determination as to whether or not medical testimony is equivocal is a question on appeal as to the competency, not the credibility, of the testimony. *Roeberg Enterprise, Inc. v. Workmen's Compensation Appeal Board*, 42 Pa. Commonwealth Ct. 308, 400 A.2d 911 (1979). The employer contends here that the report of Dr. Sherman, introduced by the claimant as part of his case in chief, so contradicted the testimony of Dr. Harbosky on the issue of causation as to render the claimant's proof equivocal and legally insufficient to sustain his burden of proof.

Our review of the record indicates that the deposition of Dr. Harbosky was itself unequivocal when evaluated in its entirety, as it must be, *Duquesne*

*Light Co. v. Bundy,* 53 Pa. Commonwealth Ct. 60, 415 A.2d 724 (1980), and we are not persuaded by the employer's argument that the contradictory letter of Dr. Sherman which the claimant also introduced rendered the otherwise competent testimony of Dr. Harbosky equivocal. That rule of law, which can be traced back to the case of *Mudano v. Philadelphia Rapid Transit Co.,* 289 Pa. 51, 137 A. 104 (1927), has been utilized in jury trials but it has never been applied in cases arising under The Pennsylvania Workmen's Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §1 et seq. We believe that there are two fundamental differences between jury trials and workmen's compensation hearings which preclude application of that rule here: (1) a referee is not bound by technical rules of evidence, Section 505 of the Administrative Agency Law, 2 Pa. C. S. §505; and (2) unlike a jury, a referee has a certain amount of expertise in resolving factual inconsistencies in medical testimony, and he must often choose between the testimony of conflicting medical witnesses. *See e.g., Jeddo Highland Coal Co. v. Workmen's Compensation Appeal Board,* 53 Pa. Commonwealth Ct. 151, 416 A.2d 655 (1980). Nor do we believe that the fact that the claimant himself produced conflicting evidence affected the ability of the referee here to evaluate the evidence before him.

Moreover, even if the jury-trial rule expressed in *Mudano* should be held applicable to workmen's compensation cases, we believe that the claimant would still prevail here. In order for conflicting evidence to defeat the claimant's case, the two witnesses must be "equally accredited by [the] plaintiff." *Mudano v. Philadelphia Rapid Transit Co., supra* at 61, 137 A. at 108. In the present case, Dr. Sherman was not accredited as an expert witness and the only evidence attributable to him was contained in his letter to the

claimant's counsel, while Dr. Harbosky's opinion was introduced through deposition as that of an expert and as that of the claimant's treating physician. We do not believe, therefore, that the two witnesses were "equally accredited" by the claimant. In addition, the conflicting testimony of medical witnesses must "so vitally disagree on essential points as to neutralize each other's opinion evidence." *Mudano v. Philadelphia Rapid Transit Co., supra* at 61, 137 A. at 108. Here, Dr. Harbosky examined the claimant not only in July of 1977 but again in December of 1977 and he testified that, during that period, the claimant's cervical condition was constantly improving. We cannot say, therefore, that Dr. Harbosky's report was in such vital disagreement with Dr. Sherman's letter that his findings could not be accepted. We must conclude that the medical evidence presented by the claimant here was not rendered equivocal or incompetent.

We will therefore affirm the Board's award of benefits.

### ORDER

AND Now, this 3rd day of September, 1981, the order of the Workmen's Compensation Appeal Board in the above-captioned matter is affirmed and

IT Is ORDERED that judgment be entered in favor of the claimant, Donald C. Porretto, against General Electric Company and/or the Electric Mutual Liability Company and they are directed to pay to the claimant compensation at the rate of $162.59 per week from July 18, 1977 to March 10, 1978 and this award is suspended as of March 10, 1978. It is directed that interest be paid on the award at the rate of 10% per annum and that 20% of each weekly compensation benefit check be paid to the claimant's counsel, Damon Faldowski. It is also directed that the claimant's medical expenses be reimbursed as set forth below:

Dr. Paul J. Harbosky ............ $1,121
Dr. Samuel Sherman ............. $    60

Total                           $1,181

Judge WILKINSON, JR. did not participate in the decision in this case.

Judge MACPHAIL dissents.